## MASON et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. May 17, 1921.)

No. 3548.

1. **Mines and minerals ⊂⇒9—Order withdrawing public lands held effective to prevent subsequent valid mineral entry.**

    An order of the Interior Department withdrawing certain described public lands from settlement and entry, "or other form of appropriation," *held* effective to prevent the subsequent location of a valid mineral claim on the lands, where its purpose was to withdraw them pending investigation of their value for oil and gas.

2. **Mines and minerals ⊂⇒7—Trespasser liable for oil taken, without deduction for cost of production.**

    A trespasser, who extracted and sold oil from public land, claiming under a mineral location made with knowledge that the land had been withdrawn by the Land Department from "Settlement and entry or other form of appropriation," *held* liable, at law or in equity, for the value of the oil so taken, without deduction for the cost of its production.

3. **Mines and minerals ⊂⇒7—Advice of counsel held not to justify trespass.**

    Where a trespasser extracted and sold oil from public land, claiming under a mineral location made with knowledge of an order of the Interior Department withdrawing the land from any form of appropriation, and that the Land Department had construed such order as barring mineral locations, the fact that he sought and obtained an opinion from counsel giving a contrary construction to the order cannot justify the trespass as one made in good faith, so as to affect the measure of the trespasser's liability.

4. **Public lands ⊂⇒8—Measure of recovery for trespass on public lands not governed by local laws.**

    The measure of recovery by the United States for an alleged unlawful appropriation of public lands is not governed by local laws or decisions, but by general principles having uniform operation in all federal courts.

5. **Mines and minerals ⊂⇒7—Liability for trespass cannot be lessened by payment to cotrespasser.**

    The liability of a trespasser for oil taken from public land cannot be lessened by the amount paid as royalty to a lessor, who was also a trespasser.

Appeal and Cross-Appeal from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Suit in Equity by the United States against Sam W. Mason and others. From the decree, all parties appeal. Affirmed in part and reversed in part.

S. L. Herold and J. A. Thigpen, both of Shreveport, La. (R. L. Batts, of Pittsburgh, Pa., D. Edward Greer, of Houston, Tex., and Hampden Story, J. A. Thigpen, and S. L. Herold, all of Shreveport, La., on the brief), for appellants and cross-appellees.

Robert A. Hunter, of Shreveport, La., Sp. Asst. Atty. Gen., for the United States.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was a suit in equity, brought by the United States, appellee and cross-appellant (herein referred to

as the plaintiff), against the appellants and cross-appellees (herein referred to as the defendants). The relief prayed for included the cancellation and annulment of a mineral location made on March 26, 1910, by the defendants Sam W. Mason and W. W. Mason, covering a described 20 acres in section 5, township 20, range 16 west, in Caddo parish, La., and of a lease made by said Sam W. Mason and W. W. Mason to the defendant Gulf Refining Company of Louisiana; an adjudication that said land is the property of the plaintiff; the issuance of an injunction; for an accounting by the defendants for oil and gas removed or extracted from said land, and for all moneys, or things of value derived from the sale or disposition of same, and for all rents, royalties, and proceeds arising from the sale or lease of the same; and the recovery by the plaintiff from the defendants of all such sums so received by them, and all damages sustained by the plaintiff in the premises.

The court decreed the cancellation of the above-mentioned mineral location and lease, that the land mentioned is the property of the plaintiff, and that the defendants pay to the plaintiff the ascertained value of the oil produced from the well bored on the land, less the ascertained drilling and operating costs incurred. The defendants complain of the action of the court in deciding against the validity of the above-mentioned mineral location, and in not deducting as an expense of operation, from the net amount produced by the defendant Gulf Refining Company of Louisiana, the amounts paid to its codefendants as royalties. The plaintiff complains of the decree because it was not in its favor for the full value of the oil extracted and removed from the land, without deduction of the amount of costs and expenses incurred in producing that oil.

[1] The plaintiff relied on the following order as having the effect of invalidating the above-mentioned mineral location:

"5496 A. D. Department of the Interior, General Land Office, Dmg-3fs File. Washington, D. C., December 15, 1908. Address Only the Commissioner of the General Land Office. Register and Receiver, Natchitoches, Louisiana. See, also, 1910–44655. Sirs: To conserve the public interests, and, in aid of such legislation as may hereafter be proposed or recommended, the public lands in townships 15 to 23 north, and ranges 10 to 16 west, Louisiana meridian, Natchitoches Land Office, Louisiana, are, subject to existing valid claims, withdrawn from settlement and entry, or other form of appropriation.

"Respectfully,                               Fred Dennett, Commissioner.
"Approved:
      "LRS.                            James Rudolph Garfield, Secretary."

The defendants admitted that the plaintiff owned the land in question on and before the date of the above set out order, but contend that that order did not have the effect of invalidating the attacked mineral location. That order was "ratified and confirmed and continued in full force and effect" by an order of the President made on the 2d day of July, 1910, under the authority conferred by the Act of June 25, 1910, entitled "An act to authorize the President of the United States to make withdrawals of public lands in certain cases." 36 Stat. 847 (Comp. St. §§ 4523–4525). As the last-mentioned order was made after the date of the mineral location in question and after the boring

of an oil-producing well on the land, the plaintiff must rely on the order of December 15, 1908, to sustain its contention as to the invalidity of the mineral location.

The Director of the United States Geological Survey, by several communications addressed to the Secretary of the Interior in October and November, 1908, called attention to waste of natural gas and oil in the Caddo oil field, to the fact that lands in, or in the neighborhood of, that field remained in federal ownership, referred to tracts in township 20 north, range 16 west, as "clearly within the known productive area of this oil and gas field," and recommended that the government take action to prevent further drilling for oil or gas in that field until effective measures be taken to prevent the waste of gas, and that public lands within and near to that field be withdrawn from entry pending the investigation then under way as to their value for oil and gas. On December 15, 1908, the date of the above set out withdrawal order, the Commissioner of the General Land Office gave notice of the withdrawal to the register and receiver at Natchitoches, La., by a telegram of the body of which the following is a copy:

"Public lands in townships fifteen to twenty-three north, inclusive, of ranges ten to sixteen west, inclusive, Louisiana meridian, withdrawn this date by Secretary from all settlement, entry, and appropriation."

The Commissioner confirmed his telegram by a letter of the same date, which contained the following:

"Confirming my telegram of December 15, 1908, you are advised of the withdrawal on that date by the Secretary from all settlement, entry, and appropriation of the public lands in townships 15 to 23 north, inclusive, of ranges 10 to 16 west, inclusive, Louisiana meridian. Make proper notations upon your records. No right whatever can be obtained by any location or settlement made, or claim initiated, after the withdrawal, and any applications, selections, or entries based thereupon must be rejected by you subject to appeal."

The mineral location relied on by the defendants was invalid, and conferred no right if it was inconsistent with the terms of the above set out withdrawal order. United States v. Midwest Oil Co., 236 U. S. 459, 35 Sup. Ct. 309, 59 L. Ed. 673; United States v. Morrison, 240 U. S. 192, 36 Sup. Ct. 349, 60 L. Ed. 541. In behalf of the defendants it is contended that the use in that order of the words "settlement and entry" was meant to refer to acquisition under the homestead law, as only acquisition under that law requires both settlement and entry, and that the use of the immediately succeeding language, "or other form of appropriation," was meant to cover only forms of appropriation more like the one specifically mentioned than one initiated by a mineral location. Certainly nothing in the order plainly indicates the existence of an intention to exempt from its operation any form of appropriation of public land in the townships named. The words used are consistent with the existence of an intention to cover all forms of appropriation of government land. A mineral location is the initiation of a method of appropriating public land provided for by law. If it is assumed that the words "settlement and entry" referred only to acquisition under the homestead law, and that the mak-

ing of a mineral location is to be regarded as the initiation of a form of appropriation of a distinctly different class, nevertheless the rule that where particular words of description are followed by general terms the latter will be regarded as applicable only to persons or things of like class is not to be so applied as to keep the words "other form of appropriation" from embracing one initiated by a mineral location, when to do so gives the order of withdrawal an operation different from that intended and disclosed by the officials who made and approved it. Danciger v. Cooley, 248 U. S. 319, 39 Sup. Ct. 119, 63 L. Ed. 266.

The language of the withdrawal order is to be read with reference to the facts and circumstances connected with the making of it and the evils sought to be remedied, and in the light of the contemporaneous construction of it by the official who made it and who was charged with the duty of enforcing it. 36 Cyc. 1137 et seq. Evidence above referred to makes it plain that the order was intended to prevent the waste of gas and oil from government land and to keep the lands mentioned from passing from government ownership pending the investigation then under way as to their value for oil and gas. It is evident that the lands embraced in the order were selected for withdrawal because they were within, or in close proximity to, an area already proved to be productive of oil and gas. As lands valuable for minerals are not subject to homestead entry and are by statute reserved from sale, except as otherwise expressly directed by law (R. S. §§ 2302, 2318 [Comp. St. §§ 4591, 4613]), an order of withdrawal was not needed to keep the land in question from passing from government ownership in either of the just mentioned modes. The situation dealt with by the order was such as to make it extremely unlikely that the appropriation of that land would be attempted otherwise than under the laws relating to placer mineral claims. U. S. Compiled Statutes, § 4638. If the last-mentioned mode of appropriation was not interfered with by the order, it was ineffective to prevent the only mode of appropriation likely to be resorted to under the then existing circumstances, and the public lands in the townships named remained as much subject to wasteful exploitation of their oil and gas contents as they were before this order was made.

If the order had the meaning attributed to it by counsel for the defendants, its futility as a conservation measure was obvious. The order utterly failed to accomplish the purpose disclosed by the circumstances connected with the making of it, if it left the land mentioned subject to mineral locations. The making of the order is not to be dissociated from the contemporary promulgation of it by the official who made it, the Commissioner of the General Land Office. Those acts were parts of one transaction. That official's telegram and letter of the same date to the register and receiver in immediate charge of the enforcement of the order show unequivocally that he construed the order as having the effect of withdrawing the land embraced in it from "all settlement, entry and appropriation," with the result that "no right whatever can be obtained by any location or settlement made, or claim initiated, after the withdrawal." The language of the order is not

such as to require that it be given a meaning different from that contemporaneously attributed to it by the maker of it, who was the highest officer of the executive department charged with the duty of executing it. That being so, the contention made in behalf of the defendants as to the meaning and effect of the withdrawal order could not be sustained without disregarding considerations which are entitled to persuasive influence in the interpretation or construction of it. For reasons above indicated, we conclude that the withdrawal order of December 15, 1908, was meant to, and did, prevent such a mineral location' as the one relied on from conferring any right on anyone claiming under it.

[2] It follows that the defendants were trespassers, and their occupation and use of the government's land were with full knowledge of the facts which made such occupation and use unlawful. They knew of the existence of the withdrawal order. In their behalf it is contended that because, after getting a lawyer's advice on the subject, they, in pursuance of the advice given, acted under the influence of mistakes of law as to the validity and meaning of the order, they were entitled, in an accounting with the government for the value of the oil taken from its land, to be credited with the drilling and operating costs incurred. If the plaintiff had sued at law to recover the damages for which the defendants made themselves liable, the latter's above-mentioned mistakes of law would not have stood in the way of the recoverable damages being measured by the value of the oil taken, without credit or deduction for the expenses incurred by the wrongdoers in getting it. Union Naval Stores Co. v. United States, 240 U. S. 284, 36 Sup. Ct. 308, 60 L. Ed. 644. In the case cited the Naval Stores Company was sued for the conversion of spirits of turpentine and rosin produced from gum taken from trees on land embraced in an unperfected homestead entry, and acquired by the defendant from the homesteader with knowledge of the facts which made the turpentining operations on the land unlawful, and after it was informed that when the homesteader turpentined the land he thought there was no law against his doing so. It was decided that the homesteader, having acted with full knowledge of the facts, was not excused by his mistake of law, and that the defendant could take no credit for the work and labor bestowed upon the turpentine by the homesteader, but must answer for its value as manufactured products.

The fact that the instant case was brought in a court of equity does not keep the ruling in the cited case from being applicable. It is not disclosed that anything has occurred, which, in a court of equity, would deprive the plaintiff of the right to enforce whatever liability the defendants incurred by their wrongdoing. There is nothing to support a claim that it would be inequitable for the plaintiff to get what it would have been entitled to, if it had brought an action at law based upon the same wrongful conduct. The damages recoverable at law for such wrongdoing are equally recoverable in a court of equity. Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, was a suit in equity for an injunction, discovery, and accounting, brought by the holder of an oil and gas lease against those who, under color of a later lease made by the owner, took oil and gas from the leas-

ed land. Part of the oil was taken while the defendants honestly believed that the lease they held was the only one on the premises, and part was taken after they were fully informed of the prior lease and of the complainant's claim based upon it. On the question of the liability of the defendants for oil taken after they were informed of the prior lease, it was decided that they were not entitled to a deduction of the amount of expenses incurred in getting that oil. The following was said in the opinion:

"But the expenses incurred after August 1, 1907, are upon a different footing. On that date Solley and his associates were actually and fully informed of the prior lease and of the complainants' purpose to insist upon the rights conferred by it and to obtain redress for the invasion of those rights, so what was done thereafter cannot be regarded as anything less than a willful taking and appropriation of the oil which was subject to the complainants' superior right."

[3] As a trespasser's mistake of law does not, when he is sued at law, have the effect of entitling him to an allowance for the value of his labor expended in committing the trespass, and as the legal rule for measuring damages recoverable from a trespasser prevails in a court of equity, in the absence of anything making it inequitable for that rule to be enforced in favor of the party seeking equitable relief, the contention in question cannot be sustained, unless that result is required by the circumstance that the defendants acted in reliance on incorrect advice given by a lawyer. The circumstances attending the giving of that advice and the action of the defendants in pursuance of it are to be considered. The unlawful acts of the defendants in appropriating the land in question and taking valuable products therefrom were committed after the highest official of the executive department of the government charged with the custody and protection of the public lands, acting under an asserted right to do so, and in the belief that the land in question contained valuable oil and gas, which should be conserved, had publicly and formally adopted the policy of keeping that land in government ownership and conserving whatever of value it contained until Congress, after being informed of its value or lack of value for oil and gas, should determine the disposition to be made of it, and, in promulgating the order evidencing the policy adopted, had unequivocally given to that order the meaning, which the language was capable of expressing, of forbidding such an appropriation of that land and its contents as the defendants were guilty of. The trespass complained of was committed after warning given by the owner.

The defendants do not claim that they acted in excusable ignorance of that warning. If they did not actually know that the withdrawal order was intended to prevent any appropriation of the land or its mineral contents, it was because they intentionally or negligently failed to inform themselves of what was disclosed by official documents contained in the public files of the local land office. They either knew, or were negligent in not knowing, that the correctness of the legal advice under which they acted was controverted by the highest official representative of the public in the matter of protecting its rights in the land. They were not in the position of one who acts on the faith of legal

advice, the correctness of which he supposes to be acquiesced in by the party to be adversely affected by conduct in pursuance of it. The evidence is not inconsistent with the conclusion that the advice was sought with the disclosed purpose of finding an excuse for or justification of an already contemplated appropriation of the land, in disobedience of the withdrawal order as construed by the official who made it. It was given under conditions conducive to partisan bias and to the vitiating influence of selfish motives. It was acted on with knowledge, or ample opportunity to be informed, of the conflicting views as to the right or lack of right of the defendants to do what they did. It was not unwittingly that they took the chance of their conduct being condemned as wrong and unlawful in the to be anticipated possible event of the legal views expressed by their counsel not prevailing over inconsistent ones known to be entertained by high officials who had no personal interest to be affected.

We are not of opinion that, in the determination of the damages for which the defendants are liable because of their unlawful acts, the giving, under the circumstances disclosed, of the advice of counsel in pursuance of which they made mistakes of law, which they claim influenced their conduct, requires that those mistakes be given an effect or influence not accorded to the mistake of an occupant of public land included in his unperfected homestead entry, in making an unlawful use of that land when he thought there was no law against his doing what he did, and, so far as appears, was, unaware that any one thought otherwise, nor to the conduct of the holder of an oil lease in taking oil from the leased land after he was informed that right to that oil was claimed by another under a prior lease made by the owner. We think the evidence adduced required the conclusion that the wrongful acts complained of were committed under such circumstances as forbid their being regarded as anything less than a willful taking and appropriation of the plaintiff's property, with the result of depriving the wrongdoers of a right to be credited with the amount of expenses they incurred in taking the plaintiff's oil.

Such a valid conservation measure as the one in question could not be expected to be at all effective if the erroneous advice of a lawyer as to its validity or meaning is given the effect of enabling a trespasser, with knowledge or ample opportunity to know that the correctness of that advice is officially and publicly controverted, to take and convert the things of value sought to be conserved, and to contest the question of his liability without risking anything but the profit he would realize in the event of his being successful in the contest. A reason for the existence of the rule that ignorance of law does not excuse is that a different rule is incompatible with the regulation of human conduct by law. A mistake of law, made under the influence of advice of counsel, given and acted on under such circumstances as those disclosed by the evidence in this case, is within the reason of the rule mentioned, and is not within any recognized exception to or modification of that rule. To charge the government with the amount of expenses incurred by trespassers in taking oil from public land validly withdrawn from appropriation is incompatible with the enforcement of the policy evi-

denced by the withdrawal order. To allow the credit claimed in behalf of the defendants would amount to paying them for doing what was legally forbidden.

[4] A provision of the Louisiana Civil Code and decisions of the Supreme Court of that state are referred to in argument of counsel for the defendants in support of the contention that under the law of that state the defendants, in the circumstances disclosed, are liable only for the difference between the value of the oil produced and the cost of producing it. It is not necessary to determine the import of the state statutes and decisions relied on, as in this suit in equity by the government for redress for an alleged unlawful appropriation of part of the public domain the relief grantable is not determined by local laws or rules of decision, but by general principles, rules, and usages of equity having uniform operation in federal courts, wherever those courts are sitting as courts of equity. The public domain is not at the mercy of state legislation or decisions. Utah Power & Light Co. v. United States, 243 U. S. 389, 37 Sup. Ct. 387, 61 L. Ed. 791; Guffey v. Smith, supra.

[5] The amount for which the defendant corporation which got the oil became liable was not lessened by its payment of royalties to other defendants, who were liable as cotrespassers. Trespassers cannot, by dividing the fruits of their wrongdoing, convert their joint liability for the whole into a several liability of each of them for only the share or part he got or retained.

It was not error to allow interest from the date of the master's report on the amount he found to be due at that time. Interest from that date was compensation for the withholding of the amount after the date it was found to be due.

For reasons above indicated, the decree under review is affirmed in so far as it was in favor of the plaintiff, and is reversed in so far as it credited the defendants, or any of them, with the drilling and operating costs incurred, and the cause is remanded, with direction that the accounting and the decree be conformed to the views herein expressed.

Affirmed in part; reversed in part.