[Civ. No. 12407. First Dist., Div. One. June 29, 1943.]

BENJAMIN F. FARRINGTON, Appellant, v. A. TEICHERT & SON, INC. (a Corporation), Respondent.

470

Ogden, Crocker & Steelman for Appellant.

Stanley Pedder, Kenneth Ferguson and Walter R. Evans for Respondent.

KNIGHT, J.—Plaintiff brought this action against the defendant A. Teichert & Son, Inc., the city of Los Angeles, and the Department of Water and Power of said city, to recover damages for the alleged conversion of rock, sand and gravel removed from plaintiff's land. The city did not appear; and the demurrer of the Department of Water and Power was sustained without leave to amend; thereupon judgment was entered in its favor. The action against the defendant A. Teichert & Son, Inc., was tried before the court sitting without a jury, and the court held that the taking of the material was not tortious, but was with plaintiff's consent, acquiescence, ratification, approval and confirmation; and that accordingly plaintiff was entitled upon a quantum meruit to receive the reasonable market value of the rock, sand and gravel removed, which the court found to be 3½ cents a cubic yard for 39,701 cubic yards, and gave judgment for $1389.54. Plaintiff appeals from the judgment so rendered. The measure of damages in actions for tort such as conversion or trespass is greater than the measure of damages allowed upon a quantum meruit arising out of a contractual relationship, express or implied, and the principal question involved on this appeal is whether the trial court's conclusion that there was no conversion is supported by the evidence.

The essential facts stated in chronological sequence are these: In March, 1940, respondent, a contracting firm, was negotiating with the city of Los Angeles for a contract to construct a conduit from Leevining Creek to Grant Lake Reservoir in Mono County, and in this connection the superintendent of the firm visited the site of the proposed construction and discussed the same with the city's engineers. In the course of this examination, since rock, sand and gravel were required in the proposed construction, respondent and the city's engineers examined the gravel pits from which the city's specifications proposed that such rock, sand and gravel should be obtained. The city owned a great deal of the land in and around that locality; the gravel pits were shown on a blueprint attached to the contract specifications; and at the time of the inspection the city's resident engineer verified the pits being inspected as the ones shown upon the blueprint, and advised respondent that all of the land belonged to the city and that all of the gravel therefrom was free. Subsequently respondent was awarded a contract for the construction. Preliminary work was started in May, principally by the construction of respondent's plants for screening and processing rock, sand and gravel. All of these structures and a substantial portion of respondent's gravel pit were in fact on the city's land. In June there was a small operation from the gravel pit, and in July operations therefrom commenced in quantity. But in June, before respondent had started any substantial production from the gravel pit, appellant observed the location of the pit and plants, and thought the pit might be on his property. He continued to visit the site of the pit some seven or eight times, examining the pit, checking locations and noting respondent's operations and removal of rock, sand and gravel, but did not during that time indicate to respondent that the gravel pit might be partially upon his land. On September 11th he notified the city of Los Angeles that the respondent was on his land; but the first conversation of any sort between appellant and respondent occurred on September 16, 1940, at which time appellant called at respondent's office and told the superintendent that he considered that a portion of the gravel pit was on his land. There was some discussion on the point, during which they scaled a map produced by appellant in an effort to locate boundary lines. The whole area involved is

uncultivated and without fences or other improvements. The property here involved is a part of a "sagebrush plateau" without fences or anything to indicate where the line was, and this was the first indication to respondent that they were on anything but property belonging to the city of Los Angeles. The superintendent testified that he told appellant that if there were any question that respondent was on his land, they would have the lines surveyed, and if the gravel pit were on appellant's property they would remove therefrom; that appellant said no, that he would rather sell the gravel, or get something out of it, so they discussed the "going" price on similar material. Appellant testified that he went into respondent's office for the purpose of making a settlement on the gravel that was removed, and after going over the map and discussing price, appellant requested a meeting with Mr. Teichert, so that they could arrive at a settlement. At no time, however, throughout the course of this conversation did appellant direct or even suggest that respondent cease excavating from the gravel pit in question; and appellant conceded that it was satisfactory with him and that he understood that to the extent that any material should be removed from his land respondent should pay him the reasonable value. Subsequently several meetings were held in an effort to agree upon a reasonable price for the material. Appellant, the superintendent and Teichert were present, and the price of the material was discussed, but at none of these discussions was there anything said about respondent removing from appellant's land. Quite to the contrary the evidence shows that appellant was satisfied with the arrangement and that his understanding was that he should receive the reasonable value for the material. In this connection the evidence shows that appellant thought $6000 was a reasonable price, and respondent offered $2000; thereupon at Teichert's suggestion a letter was drafted making a demand for $6000, and Teichert stated he would try to get $3000 for appellant from the city of Los Angeles. However, appellant finally decided he should consult an attorney before he signed the demand—this was on October 15, 1940; and on November 4, 1940, he filed his complaint herein for conversion, alleging that 150,000 yards of rock, sand and gravel had been unlawfully converted, which he alleged was of the value of $75,000, for which amount he asked judgment, together with $25,000 exemplary damages.

Mainly from these facts the trial court found that it was not true that respondent had unlawfully converted the rock, sand and gravel; that it was not true that respondent removed the rock, sand and gravel without right, title or license; that the removal of the rock, sand and gravel was ratified, approved, confirmed and consented to, and acquiesced in by appellant; that appellant is estopped from claiming that respondent converted the rock, sand and gravel, or any part thereof, and has, by his conduct, ratification, approval, confirmation, acquiescence and consent become entitled to and agreed to receive therefor the reasonable market value of said rock, sand and gravel in place on his said lands; and that he represented to respondent that the removal of said rock, sand and gravel was agreeable and satisfactory to him.

It is apparent that the facts above narrated fully sustain the trial court's findings. Summarized they may be stated as follows: Appellant admits that he first saw respondent's operations in June, before they had begun in any quantity, and again seven or eight times prior to September, and that during this time he watched the operations and checked his title, but that notwithstanding this fact he did not discuss the situation with respondent or call it to respondent's attention until September 16, 1940. When he did actually discuss the matter with respondent and advised respondent that he considered respondent was upon his land, he did not ask respondent to desist or get off the land, but on the contrary expressly stated that he had no such desire, and that it was satisfactory to him that respondent remain, and that he desired respondent to continue to take rock, sand and gravel at a reasonable price, since he desired to "sell it and get something out of it." At the meeting of September 16, 1940, and at all subsequent meetings, respondent indicated that the values it had in mind were substantially those finally found by the trial court; yet appellant was content that respondent should continue operations. At none of the conversations between appellant and respondent throughout the entire time that respondent was upon appellant's land did appellant ever indicate that he was dissatisfied with receiving the reasonable value of the material being taken, or ever request respondent to desist. On the contrary, he encouraged respondent to take material upon the understanding that it was satisfactory to him, and that such would be compensated for upon the basis

of its reasonable value. ▉ At no time did appellant ever do anything to avoid the consequences or minimize respondent's taking; instead he encouraged and abetted that taking. Thus it would seem that not only was there implied consent and acquiescence to respondent's acts but express ratification and approval thereof; and the law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property. (24 Cal.Jur. p. 1024; 65 C.J. p. 14, sec. 5.) Therefore there is no merit in appellant's contention that the trial court applied an improper measure in fixing the reasonable value of the material taken. The measure appellant contends should have been adopted is the one governing in cases of tortious conversion; but the trial court found and the evidence shows there was no tortious conversion. In fact appellant does not deny that the measure applied by the trial court was proper for quantum meruit; and this is such a case.

▉ Appellant treats the September negotiations as an offer of compromise which failed by reason of the fact that a reasonable value was not agreed on. He cites *Boyes* v. *Evans,* 14 Cal.App.2d 472 [58 P.2d 922], where the court says at page 479: "It is a well established rule of law that it is not permissible to show that a party to litigation has offered to compromise the case. The rule not only excludes the offer to compromise but also all negotiations with relation thereto. (22 C.J. 308, sec. 347.)" But such rule has no application here, for since the evidence shows that it was understood between appellant and respondent that respondent might continue to remove material, paying the reasonable value thereof and of that previously removed, notwithstanding they had been unable to reach an agreement as to such value, appellant could not hold respondent for a measure of damages based on conversion when it became necessary to sue to fix the reasonable value. Evidence of such understanding would clearly be admissible as defeating the right of appellant to hold respondent as a converter. That it was understood that respondent should continue to remove material is admitted by plaintiff in his concession that he cannot claim on a tort basis for material removed after the September conferences.

▉ Respondent's superintendent testified that 2400 "concrete yards" were sold by respondent to the Macco Company for $2.00 a yard, and that about a third of the rock, sand and gravel which went into this batch came from appellant's

land. Appellant contends, therefore, that the trial court should have given appellant judgment for these 800 yards at the rate of $2.00 a yard, or for an additional $1600, stating that "The selling price of an article is recoverable in an action for conversion, since no man can profit by his own wrong." The evidence further shows, however, that the 2400 yards so sold was not just rock, sand and gravel, but was "concrete yards . . . with the cement, weighing proportion and everything," including delivery, so that "the only thing that would be necessary to have to add is water to make it concrete." Obviously, therefore, appellant was not entitled to recover the full price received by respondent, but only the value of the quantity of rock, sand and gravel taken from his land; and since there was no conversion, all he was entitled to recover therefor was the reasonable value of the rock, sand and gravel in place, which the court found to be $3\frac{1}{2}$ cents a yard, and he was given judgment for the quantity so taken at that price. ■ In this connection appellant further argues that the trial court erred in excluding the proffered testimony of one Munger, who worked for respondent as a driver for two months, to the effect that he was told by one of respondent's foremen that the respondent had sold said sand, rock and gravel to the Macco Company for $2.50 a yard, which appellant contends would have shown a higher price than that testified to by respondent's superintendent, and would have shown that *all* the sand, rock and gravel sold to said company came from the land of the appellant. The conversation was properly excluded on the ground that it was hearsay insofar as respondent was concerned; that it had not been shown to be in the course of duty; and that it was incompetent, and without foundation, upon the question of damages, for the reason that since there was a total failure of any proof that respondent's acts were malicious in fact, such testimony, even if otherwise competent, was totally irrelevant and inadmissible upon any proper theory of damages, either for innocent conversion or upon a quantum meruit.

■ Appellant's final point is that the trial court erred in not allowing interest prior to the entry of judgment, citing section 3336 of the Civil Code. That section, however, as shown by its heading and context, applies only in cases of conversion; whereas here, upon a quantum meruit for the reasonable value of the material received by respondent, the

476

amount was unliquidated until the time of judgment; and an unbroken line of authorities holds that an unliquidated claim does not bear interest. (See *Parkford* v. *Union Drilling etc. Co.*, 118 Cal.App. 538 [5 P.2d 440].)

The judgment is affirmed.

Peters, P.J., and Ward, J., concurred.