**UNITED STATES of America,**
**Plaintiff,**

v.

**MARIN ROCK AND ASPHALT COMPA-**
**NY, Inc.; Robert K. Foster and**
**Florence M. Foster, Defendants.**

**Civ. No. 68–1716.**

United States District Court
C. D. California.

Feb. 7, 1969.

Wm. Matthew Byrne, Jr., U. S. Atty., Ernestine Tolin, Asst. U. S. Atty., Lands Division, Los Angeles, Cal., for plaintiff.

Milton Wichner, Los Angeles, Cal., for defendant.

IRVING HILL, District Judge.

It is necessary to state the facts of this case rather fully before dealing with the instant motion. The facts are not in dispute. Most of the important facts are set forth in the pleadings. Some additional facts were conceded at the oral argument of the instant motion.

The Defendants in the instant action are Marin Rock and Asphalt Company, Inc. (hereinafter called "Marin") and Robert K. Foster and Florence M. Foster (hereinafter collectively called "Foster", or "the Fosters"). In the action the government sues as landowner for damages for trespass on its land. It seeks damages against each Defendant in the amount of $7,162.50 plus interest and costs. The alleged damages result from the removal of sand and gravel from the land in question. The Fosters (and others to whose interest they eventually succeeded) were locators, i. e. purported owners, of mining claims on government land located in Imperial County, California. As a result of litigation tried in this court before another judge, their mining claims were held to be invalid. That action is entitled Foster v. Jensen et al., DC, 296 F.Supp. 1348, and the judgment therein has now become final. Before that judgment was entered, the Fosters spent money in making the land ready for the extraction of sand and gravel. Most of this money was spent on neighboring lands to procure and to pipe water for the extraction operations on the land in question. Whether any of the money was spent on the land in question is not clear. But as will be discussed *infra* that question is not important. It can be assumed *arguendo* that the money was spent on the very land in issue.

Apparently the Fosters did not themselves extract anything from the land except twenty tons of Kyanite.[1] In 1960 the Fosters entered a lease with Marin. The lease permitted Marin to remove sand and gravel from the land in question upon payment to the Fosters of a royalty of $2\frac{1}{2}$¢ per ton, which Marin agreed to pay. In addition, Marin agreed to improve the said water well and water piping facilities. Pursuant to the lease, Marin removed 286,500 tons of sand and gravel from the land in question. At the royalty rate of $2\frac{1}{2}$¢ per ton, this equals $7,162.50, the amount of the damages sought herein. Marin admits that it owes the sum of $7,162.50 under its lease with the Fosters and that it has not paid the Fosters that sum. In lieu of paying the Fosters, by agreement between the Defendants, that sum has been deposited in trust for the benefit of the government and the Fosters as their interests may be determined in this action.

It is assumed for the purposes of this opinion that both Defendants were good faith trespassers.

Defendants are represented by the same counsel and filed a single answer bearing a filing date of November 6, 1968. That answer contains, on behalf of Marin alone, what is denominated as a "First, Affirmative and Separate Defense to Plaintiff's Complaint on File Herein as a Cross-Claim Thereto". It alleges that the "direct expenses" of mining the sand and gravel and the cost of producing water for the purpose, exceeded the value of the sand and gravel extracted and were "substantially" in excess of $7,162.50.

The same answer contains, on behalf of Defendant Foster alone, what is denominated a "Second, Affirmative and Separate Defense to Plaintiff's Complaint on File Herein, and as a Cross-Claim Thereto". It alleges that the Fosters' "development expenses" and the cost of sinking a well and producing water for the mining operations were "substantially" in excess of the value of the minerals removed and in excess of $7,162.50.

In their briefs and at the argument, Defendants now call their pleadings "Counter-Claims" rather than "Cross-Claims". By motion filed November 19, 1968, the government seeks to have the aforesaid affirmative defenses and "Cross-Claims" of each Defendant dismissed. The government originally urged two grounds in its motion papers:

1. The pleadings fail to state a defense.

2. The government has not consented to be sued for alleged expenditures of Defendants made while committing an act of trespass on the government's land.

A third ground was added at the oral argument, i. e. Defendants must show compliance with 28 U.S.C. § 2406 and have failed to do so. Section 2406 requires that any defendant in an action brought against him by the United States who seeks to assert therein a "credit" must show that his claim has been disallowed by the General Accounting Office.

The second and third grounds are without merit and can be easily and quickly disposed of. The general principle of law which denies recovery against the government except where sovereign immunity has been waived and the action has been consented to, is not applicable to the instant case on its facts. Nor is 28 U.S.C. § 2406 applicable to the instant case where no affirmative relief is sought by Defendants against the government.

 Defendants' position may be analyzed in two different ways, each of which would make inapplicable both the requirement of consent to be sued and § 2406. First, it has been held that where a defendant seeks recoupment by virtue of facts arising from the very transaction which is the subject of the government's action neither the consent rule nor § 2406 applies. United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940);

1. Apparently the government disregards this 20 tons as de minimis.

United States v. Frank, D.C., 207 F.Supp. 216 (1962); 3 Moore, Federal Practice, 2d Ed. 1948, p. 7, N. 1. That is the situation here.

■ Secondly, Defendants' pleading may be analyzed as an effort to assert a different legal theory as to the measure of damages than that upon which the complaint is based. Defendants are in essence asserting that under the law governing the measure of damages in such cases, they are permitted to prove amounts expended by them in extracting the sand and gravel to diminish the Plaintiff's recovery. And where the amounts so expended exceed the amount of damages demanded, Defendants contend that the government as Plaintiff is entitled to nothing. On this analysis Defendants are not suing the United States nor are they seeking a "credit" against the United States. They are disputing the legal measure of damages and putting the government on notice of facts which they believe will defeat its recovery if Defendants' view of the law of damages is correct.[2]

This brings us to a discussion of the remaining ground for the motion, i. e. that the pleading fails to state a defense. I understand this claim to include a contention by the government that the alleged expenditures of Defendants are not cognizable under the legal measure of damages applicable to the case. In this respect the government's position is meritorious and the pleading must therefore be stricken.

■ At the outset it is necessary to recognize that the liability of a good faith trespasser on government land is governed by the law of the state in which the land is situated. Mason v. United States, 260 U.S. 545, 558, 43 S.Ct. 200, 67 L.Ed. 396 (1923); Standard Oil Co.

of California v. United States, 107 F.2d 402, 415 (9th Cir. 1939).

The land in question is in California. But neither counsel has really understood that California state law governs the damage question and neither has done an adequate job of briefing the California law on the subject.

It appears that all of the reported cases involving damages for good faith trespass on United States government lands, have involved the extraction of oil and gas. These cases are Mason v. United States, *supra;* Standard Oil Co. of California v. United States, *supra;* United States v. Wyoming, 331 U.S. 440, 67 S. Ct. 1319, 91 L.Ed. 1590 (1947); Jeems Bayou Fishing & Hunting Club v. United States, 260 U.S. 561, 43 S.Ct. 205, 67 L. Ed. 402 (1923); and United States v. Standard Oil Co. of California, 21 F. Supp. 645 (S.D.Cal.1937); aff'd sub nom Standard Oil Co. of California v. United States, *supra.*

Counsel for both sides have quoted from the above oil and gas cases and relied on them without reference to what state law was being applied and without any attempt to investigate whether the measure of damages in oil and gas trespass cases is the same for other types of cases.

If the instant case involved oil and gas, the expenses incurred by one or both of the Defendants in extracting the substance might well be relevant and the amount of such expenses might have the effect of diminishing the government's recovery against one or both of the Defendants. Many states, including California, have provided that the measure of damages for good faith trespassers who have extracted oil and gas is the value thereof at the time of extraction

---

2. Incidentally, 28 U.S.C. § 2406 is not a total bar. It appears to be a bar only if Defendant is unable to show rejection by the General Accounting Office at the time of trial. 3 Moore, Federal Practice, 2d Ed. 1948, p. 68; United States v. Standard Aircraft Corp., 16 F.2d 307 (S.D.N.Y.1926); United States v. U. S.

Fidelity & Guaranty Co., 24 F.Supp. 961 (E.D.Okla.1938) rev'd on other grounds, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). So Defendants here are not required to plead compliance with the section and could still theoretically comply with it before the date of trial.

less all costs of development, operation and production.[3]

In California this has been adopted as the exclusive measure of damages by statute. California Code of Civil Procedure § 349¾ provides that the measure of damages in such a case shall be the value of the oil or gas at the time of extraction "after deducting all costs of development, operation and production * * *".

Since counsel have cited the oil and gas extraction cases so extensively and seem to rely so heavily on them, it is worth analyzing those cases in some detail. In those cases the Courts have dealt with two types of defendants and two separate problems affecting them. One type of defendant is the oil company which has done the actual extraction while operating under a lease given it by someone it believed to be the rightful owner of the land. The other type of Defendant is the oil company's lessor, who thought he was the rightful owner of the land when he leased it to the oil company.

One type of problem is what may be deducted. The oil company, under the above-stated measure of damages, which allows it to deduct expenses of operation, has sought to deduct lease royalties paid to its lessor. The courts have uniformly held that the oil company may not deduct those royalties.[4]

The other problem dealt with in the cases is the liability of the lessor, sued as a co-defendant, to account over to the government for royalties it has received from the oil company. Mason v. United States, *supra,* holds that the lessor is so accountable (260 U.S. at 559, 43 S.Ct. 200) and this holding is adopted in dictum in United States v. Standard Oil Co. of California, 21 F.Supp. at p. 654. Neither opinion discusses how holding the purported landowner liable for the royalties, fits in to, or relates to, the measure of damages discussed above.

A *dictum* in *Mason, supra,* turns out to be the main reliance of Defendants in this case. In discussing the liability of the purported landowner to account to the government for the royalties paid it by the oil company, the Court said:

"The defendants who received the royalties were obviously not entitled to retain them, *and having incurred no expense in connection with the mining operations,* were liable for the entire amount and the defendants who paid the royalties were jointly liable as co-wrongdoers." 260 U.S. at 559, 43 S.Ct. 200, at 204 [Emphasis supplied.]

█ I regard the above-quoted language as a *dictum.* As such, it would not bind this court even if the applicable measure of damages is the value of the materials extracted less the costs of production.

But Defendants' argument and their reliance on the *Mason* dictum overlook the fact that the instant case may not be governed by that measure of damages. It is noted that CCP § 349¾ is applicable by its terms only to oil and gas cases. So inquiry must be made as to what measure or measures of damage are available in California to the landowner in a case, like the instant one, which involves extraction of sand and gravel. That inquiry has proved neither simple nor easy.

The closest California case on its facts to the case at bar is Farrington v. A. Teichert & Son, Inc., 59 Cal.App.2d 468, 475, 139 P.2d 80 (1943). The case involves the good faith extraction of sand and gravel and the measure of damages is defined as "the reasonable value of the rock, sand and gravel in place * * *." 59 Cal.App.2d at p. 475, 139 P.2d 80 at

---

3. As examples of the use of this measure of damages in other states, see United States v. Wyoming, 331 U.S. 440, 458, 67 S.Ct. 1319 (1947) (Wyoming law); and Jeems Bayou Fishing & Hunting Club v. United States, 260 U.S. 561, 565, 43 S.Ct. 205 (1923) (Louisiana law).

4. Standard Oil Co. of California v. United States, 107 F.2d 402, 415 (9th Cir. 1939) at p. 416; Mason v. United States, 260 U.S. 545, 558, at p. 560, 43 S.Ct. 200; (1923) United States v. Standard Oil Co. of California, 21 F.Supp. 645 at p. 655; cf. United States v. Wyoming, 331 U.S. 440 at p. 457, 67 S.Ct. 1319.

p. 83. That, in turn, was found to be 3½¢ a yard, an expression of damages in terms of a royalty rate for the privilege of extracting the items. Whittaker v. Otto, 248 C.A.2d 666, 56 Cal.Rptr. 836 (1967) also involves the measure of damages for a good faith trespasser who extracts minerals. The opinion defines the measure of damages as "the value of the ore in place * * *". 248 C.A.2d at 675, 56 Cal.Rptr. at 842. However, *Whittaker* contains language that appears to equate the value of the ore in place with the *Mason* measure of damages, i. e. the value of the items extracted, less the costs of extraction. The opinion in *Whittaker* does not cite *Farrington*, and thus there is no effort made to reconcile the two. A reconciliation of the two opinions is suggested below.

At least one other court has recognized that when we speak of the value of minerals in place, and when we speak of a "reasonable royalty" payable to the owner for the privilege of removing minerals, we are saying the same thing. Elk Horn Coal Corp. v. Anderson Coal Co., 223 F. Supp. 746 (E.D.Ky.1963). As the court said in *Elk Horn:*

> "An unintentional trespass resulting from inadvertence and mistake or an intentional trespass in reliance upon an honestly conceived legal right creates liability for the mineral removed according only to its value in the ground, or in practical effect, a reasonable royalty." 223 F.Supp. at 750.

■ I hold that a reasonable royalty is a permissible measure of damages for extraction of sand and gravel by a good faith trespasser under California law. Besides the *Farrington* opinion, support can be found for this holding in California Jurisprudence, an often-quoted text-book on California law. At one place the general rule is expressed as follows:

> "Ordinarily, the damages awarded are those that will operate to place the party injured in the position he would have occupied had the trespass not occurred." 48 Cal.Jur.2d 50 (Trespass § 47).

The above statement seems consistent with my holding *supra.* We must assume that the royalty rate negotiated between the Defendants in this case is a fair one since it was set in an arm's length negotiation. So an award to Plaintiff of the sum of such royalties is to put Plaintiff "in the position [it] would have occupied had the trespass not occurred."

In another section, California Jurisprudence says:

> "Where a trespass consists of some beneficial use made of the plaintiff's land, reasonable rental value affords the proper measure of damages." 48 Cal.Jur.2d 48 (Trespass § 44).

In land of this kind, the royalty rate would appear to measure the "reasonable rental value".

In yet another section of California Jurisprudence it is stated:

> "If the injury from a trespass is to the freehold, the measure of damages is ordinarily the difference between the fair value of the property immediately before and immediately after the injury." 48 Cal.Jur.2d 48 (Trespass § 43).

Applying that language literally, the difference between the fair value of the property before and after the extraction of the sand and gravel would appear to be the royalty which would be payable to the owner on account of the extraction.[5]

---

5. None of the above-quoted California authorities discuss Civil Code § 3334. It provides that "The detriment caused by the wrongful occupation of real property * * * is deemed to be the value of the use of the property for the time of such occupation, not exceeding five years next preceding the commencement of the action or proceeding to enforce the right to damages, and the costs, if any, of recovering the possession." Having found no case holding this section to be applicable to a situation involving wrongful extraction or severance of crops, oil or minerals, the section in my view must be construed as not applicable to the present case. But good scholarship requires that it be mentioned.

If a reasonable royalty rate is a correct measure of damages for good faith trespass of this type under California law, how then can one reconcile with such a measure of damages the result in Whittaker v. Otto, *supra,* in which the plaintiff was allowed to recover the value of the minerals extracted less the cost of extraction? The answer to this question is provided in National Lead Co. v. Magnet Cove Barium Corp., 231 F.Supp. 208 (W.D.Ark.1964). In that opinion, which involves a good faith trespasser who extracted minerals, the court concludes that the plaintiff may elect between two different damage formulae, i. e. a royalty rate *or* the value of the extracted minerals less costs of production. The court goes on to analyze the purpose and advantages of the two formulae. As the court says on page 217:

"There are two general measures of damage for trespass to minerals which are described as the 'mild' and the 'harsh' rules. The 'mild' rule applies where the trespass is inadvertent, innocent or not in bad faith, and fixes the damages as the value of the minerals in situ. The so-called 'harsh' rule, applied when the trespass is wilful, intentional, or in bad faith, allows the injured party the enhanced value of the product at the time of conversion.

*Within the framework of the mild measure, there are two different guidelines to determine the in-place value of ore:* first, the royalty value whereby the injured party is allowed as damages an amount equivalent to the value of the privilege of mining and removing the minerals; second, another application of the mild rule allows the injured party to recover the value of the minerals after extraction less a credit to the trespasser of its production costs. The effect of allowing the royalty method as damages is not to punish the nonwilful trespasser, but to compensate the injured party for being deprived of the possibility of extracting the minerals. Alternatively, allowing the injured party to recover the enhanced value of the converted minerals with a deduction in favor of the trespasser for the cost of mining them will also compensate for being deprived of the right of mining the minerals and developing them, while preventing the trespasser from profiting from his wrongdoing. *When the royalty method is used in applying the in-place measure of damages, the question of allowance to the trespasser of credit for his expenses in producing the minerals is not reached."* [Emphasis added.]

The royalty formula obviously is a simpler one to apply. It does not involve the parties or the court in any complicated accounting. It provides damages to the aggrieved party even where the trespasser's operations have proved unprofitable. The other formula, as stated in the above quotation from *National Lead,* prevents the trespasser from profiting from his wrongdoing and requires him to account to the aggrieved party for all of his net profits. Surely fairness would dictate that the Plaintiff in this type of a case have such an election of remedies and I hold that such an election exists under California law. In the instant case the government has elected to claim under the royalty formula.

For the reasons stated, the government is entitled to a judgment under the royalty formula for the full amount of $7,162.50 against both Defendants. Neither Defendant may minimize or defeat this liability by deducting or offsetting therefrom any amount that either may have spent by way of production or land improvement costs.

As to Marin, there is still another ground which would support a judgment in the full amount of $7,162.50. Marin, by contract, has agreed to pay that amount as a royalty for the privilege of removing the sand and gravel. Marin owes that amount under the contract, without reference to any expenses it may have incurred and without reference to whether its operation was profitable or

not. Surely the government, as the true owner of the land, is subrogated to the rights of the Fosters under their contract with Marin. Among the true owner's rights is the right to affirm such a contract made by a trespasser and claim its profits. Cf. California Civil Code, § 2224; Shahood v. Cavin, 154 C.A.2d 745, 748, 316 P.2d 700 (1957). But cf. Restatement of Restitution, § 203, p. 828–30.

It follows from what has been said up to this point, that the government is entitled, not only to strike the pleadings under attack here but also to a summary judgment against each Defendant for the amount claimed. The government is invited to submit such a motion at its convenience. I note that the government is seeking interest in its complaint. I believe that the right to interest is also governed by California law and I note some difficulty in determining whether interest is payable. Compare *Farrington, supra,* holding that interest is not awardable, with *Whittaker, supra,* awarding interest. Recognizing that the question of the awardability of interest has not yet been argued, I obviously have not pre-judged it. But perhaps the government will see fit to waive its claim for interest at the time of making its motion for summary judgment.

There is one further issue not raised in the motion papers but raised by me at the argument. I hold that the government is not barred from recovering judgment in this action because of any failure to assert its right to damages in the prior action, Foster v. Jensen et al., *supra.* The United States, Plaintiff here, was not a party in Foster v. Jensen et al., *supra,* and thus there cannot be applied to the United States any requirement of compulsory counterclaim.

It is ordered that Plaintiff's motion to dismiss, filed November 19, 1968, is granted as to each Defendant. If Findings of Fact and Conclusions of Law are deemed necessary, this Memorandum of Opinion shall constitute them.

It is further ordered that the Clerk serve copies of this Memorandum of Opinion, by United States mail, this date on all parties to this action.