369 F.2d 1
 Allan E. MECHAM, Elliott Lee Pratt, Julie C. Allen, Frank J. Allen, Edward W. Clyde, Thomas C. Cuthbert, William G. Gibbs, A. Reed Reynolds, Roland R. Wright, and David K. Winder, Appellants,
v.
Stewart L. UDALL, Secretary of the Interior of the United States of America, and J. E. Keough, Manager, Salt Lake Land Office, Bureau of Land Management, United States Department of the Interior, Appellees.
 No. 8462.
 United States Court of Appeals Tenth Circuit.
 November 25, 1966.
 
 Frank J. Allen, Salt Lake City, Utah (Clyde, Mecham & Pratt, Salt Lake City, Utah, with him on the brief), for appellants.
 Robert M. Perry, Atty., Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Walter T. Thurman, U. S. Atty., Walker E. Anderson, Asst. U. S. Atty., and Roger P. Marquis, Atty., Dept. of Justice, with him on the brief), for appellees.
 Before MURRAH, Chief Judge, SETH, Circuit Judge, and DOYLE, District Judge.
 SETH, Circuit Judge.
 
 
 1
 Appellants filed applications for oil shale leases on lands belonging to the United States in Utah. The filings were made in the United States Land Office at Salt Lake City, Utah, following the procedures adopted pursuant to the Mineral Leasing Act of 1920 (30 U.S.C.A. § 241). The applications were rejected by the Manager of the Land Office where filed on the ground that the lands and deposits sought to be leased were withdrawn from lease by an Executive Order. The Director of the Bureau of Land Management and the Secretary of the Interior in turn affirmed the rejection. Appellants then filed this action in the United States District Court to compel the issuance of the leases. The District Court dismissed the complaint for failure to state a claim on which relief could be granted, and this appeal was taken.
 
 
 2
 The appellants claim that by their filings they became the first qualified applicants, and were entitled to have oil shale leases issued to them.
 
 
 3
 The appellees show that the rejection of the applications was based on the withdrawal of the lands from oil shale leasing by Executive Order No. 5327 which so withdrew all deposits of oil shale and all lands containing such deposits for specified purposes.
 
 
 4
 The appellants, in turn, urge that the Executive Order No. 5327 was not valid, or was not applicable to the applications to lease here made.
 
 
 5
 This Executive Order No. 5327 of April 15, 1930, reads as follows:
 
 
 6
 "Under authority and pursuant to the provisions of the act of Congress approved June 25, 1910 (36 Stat. 847), as amended by the act of August 24, 1912 (37 Stat. 497), it is hereby ordered that subject to valid existing rights the deposits of oil shale, and lands containing such deposits owned by the United States, be, and the same are hereby, temporarily withdrawn from lease or other disposal and reserved for the purposes of investigation, examination, and classification.
 
 
 7
 "This order shall continue in full force and effect unless and until revoked by the Prisident [sic] or by act of Congress."
 
 
 8
 The phrase, "* * * temporarily withdrawn from lease or other disposal, * * *" is the portion of the above Order No. 5327 which is significant for this appeal. The appellants urge that the Order is void because the President's authority to withdraw lands is derived from the Pickett Act (43 U.S.C.A. §§ 141-142), and this Act only authorized him to withdraw lands from "settlement, location, sale, or entry" and not from leasing.
 
 
 9
 The applicable portion of the Pickett Act reads as follows:
 
 
 10
 "The President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry any of the public lands of the United States, including Alaska, and reserve the same for water-power sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an Act of Congress. June 25, 1910, c. 421, § 1, 36 Stat. 847." [43 U.S.C.A. § 141]
 
 
 11
 The procedure adopted by the Government for making its mineral lands available to private individuals and corporations for development for oil and gas or for oil shale was changed by the Mineral Leasing Act enacted in 1920 (30 U.S.C.A. §§ 226, 241). This change was from "location" to leasing, and was made some ten years after the Pickett Act which referred to "location," as quoted above. The change was a substantial one in terms of procedures and policy of development, but there is no indication by the Mineral Leasing Act of any intention of Congress to alter the authority of the President expressed in the Pickett Act relative to changes in land status. There is no reason to narrow the scope and change the purpose of the Pickett Act by reason of a change in the method for developing the lands when the purpose of the Pickett Act can be continued and nothing is presented to show that Congress intended to change it by providing for leasing. The status of the lands is a matter separate and distinct from methods of developing or disposing of the lands. The Supreme Court considered the argument of appellants in the case of Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616. The Court there considered Wilbur v. United States, 60 App. D.C. 11, 46 F.2d 217, and said:
 
 
 12
 "The Mineral Leasing Act of 1920 changed the procedure for acquiring oil and gas rights in public lands: the Secretary was empowered to issue prospecting permits and required, in the event a discovery was made under the permit, to issue a lease which entitled the lessee to extract the mineral, but gave him no right in the land itself. From 1920 on, therefore, the language of the Pickett Act no longer technically encompassed leasing. Nonetheless, it was clear that the Act had been specifically designed to legitimize orders like the 1909 withdrawal order. The Court of Appeals reasonably concluded in Wilbur that the fact that Congress had in 1920 changed the procedure — from `location' to `leasing' — for acquisition of oil and gas rights afforded no reason for concluding that they had thereby intended to cut back the power granted in 1910."
 
 
 13
 This Supreme Court decision answers the argument of appellants on the point, and demonstrates that the Executive Order is, and was, valid to withdraw the lands and deposits in question from leasing. It would not appear necessary under this construction to consider whether or not the President has authority to withdraw lands in addition to that given him in the Pickett Act. United States v. Midwest Oil Co., 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673.
 
 
 14
 The appellants also urge that Congress by its enactment of the Mineral Leasing Act Revision of 1960 (Public Law 86-705, 74 Stat. 781), which amended many sections of the Mineral Leasing Act, revoked or suspended Executive Order No. 5327. This revision of the Act was substantial, and changes were made in sections pertaining to oil shale leases (30 U.S.C.A. § 241) by Section 7 of the Revision (Public Law 86-705 § 7). The revision appears to have been made to add some additional minerals or materials. It does expressly "authorize" the Secretary to lease oil shale deposits, but this is not a requirement that he lease nor is it different from other general authorizations to lease where lands may be withdrawn. The power is given subject to the existing status of the land, and it must also be construed to be subject to existing restrictions or limitations of whatever nature not expressly altered. The authority is effective and given to be effective when existing restrictions or limitations elsewhere imposed are lifted. No reference is made in the Revision to the existing Presidential withdrawal of oil shale lands and deposits. There is nothing to indicate that any reference to land status was intended. As stated with reference to the first point the manner of development is separate from land status. Here Congress empowered the Manager to lease when the land status permitted. The authority was given to provide for the eventuality of a change of status.
 
 
 15
 Appellants urge that the Pickett Act authorized "temporary" withdrawals; and this is to meet emergencies or transitory conditions and not to permit a withdrawal from 1930 to the present. Appellants also urge that the real purposes are for delay and thus not within the Pickett Act. We cannot say that from the Government's viewpoint and considering its permanence compared to the life of man, and the significance of oil shale as a national resource, that this has not been temporary. There is evidence that investigations and studies are being conducted to carry out the purposes of the withdrawal. The Pickett Act and the Executive Order both expressly provide for revocation of the withdrawal by either the President or by Congress. Thus appellants can seek a revocation by either if they feel the withdrawal has extended beyond what a temporary one should.
 
 
 16
 Affirmed.