PORTLAND GENERAL ELECTRIC COMPANY, an Oregon Corporation and L. C. Curtright, Plaintiffs,

v.

Thomas KLEPPE, Secretary of the Interior, Curtis J. Berklund, Director of Bureau of Land Management, Daniel P. Baker, State Director, Bureau of Land Management, Wyoming, Fred E. Wolf, District Manager, Bureau of Land Management, Rawlins, Wyoming, Defendants.

No. C76–155K.

United States District Court, D. Wyoming.

Dec. 14, 1977.

James L. Applegate of Hirst & Applegate, Cheyenne, Wyo. and Rockne Gill and Paul N. Daigle of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for plaintiffs.

Charles E. Graves, U. S. Atty., Dist. of Wyoming and John E. Lindskold, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

KERR, District Judge.

This case presents the question of the validity of 1,740 uranium mining claims located by plaintiff Portland General Electric (P.G.E.) on lands located in the State of Wyoming and purportedly withdrawn by Order of the Secretary of the Interior. The validity of these claims hinges upon the authority of the withdrawal Order and the propriety of such withdrawal.

Defendants filed their Motion for Judgment on the Pleadings. Plaintiffs responded by filing a Motion for Summary Judgment. The parties agree that there is no dispute as to any genuine issue of fact and the question to be resolved is one of law.

In April, 1968, the Secretary of the Interior issued Public Land Order (PLO) 4522, 35 Fed.Reg. 3057, which withdrew 3,000,000 acres of public lands in Wyoming, Colorado and Utah from appropriation under the mining laws relating to metalliferous minerals. Uranium is a metalliferous mineral. The authorization for this withdrawal con-

sisted solely of a statement that the Order was issued under the authority vested in the President.

In 1975, P.G.E. located uranium mining claims on public lands in the Kinney Rim area of Wyoming, which lands were included in the withdrawal Order. Discovery was halted when the Federal Government threatened to bring a trespass action against P.G.E. The plaintiffs assert that no Presidential authority to make such withdrawal of public lands exists and, therefore, the withdrawal was invalid. P.G.E. seeks to have the withdrawal Order declared invalid so that it can establish title to the mineral claims on the lands in question.

. The withdrawal of the lands in question from the operation of the mining laws was made more than six years before P.G.E. located its mining claims. P.G.E. contends it was unaware of the withdrawal. Publication of the withdrawal Order in 35 Fed. Reg. 3057 was sufficient notice. The lack of knowledge was due entirely to the plaintiffs' failure to investigate and the plaintiffs' lack of knowledge is of no effect.

On September 24, 1968 the Secretary of the Interior issued PLO 4522, 35 Fed.Reg. 3057. The withdrawal Order provides in part:

### COLORADO, UTAH, AND WYOMING
#### Withdrawal for Oil Shale

By virtue of the authority vested in the President and pursuant to Executive Order No. 10355 of May 26, 1952 (17 F.R. 4831), it is ordered as follows:

1. Subject to valid existing rights, the deposits of oil shale and lands containing such deposits, owned by the United States and under the administrative jurisdiction of the Department of the Interior in the following described areas, are hereby withdrawn (1) from appropriation under the United States mining laws relating to metalliferous minerals, and (2) from sodium leasing except as hereafter provided, for protection of the multiple development of the minerals and other resources in the lands.

The plaintiffs contend, and the Court agrees, that Congress has not expressly granted to the Executive the authority to withdraw public lands from the operation of the mining laws. However, the Court does not accept the contention that the Pickett Act, 43 U.S.C. §§ 141–142, prohibits such withdrawals under the provisions of 43 U.S.C. § 142:

All lands withdrawn under the provisions of this section and section 141 of this title shall at all times be open to exploration, discovery, occupation, and purchase under the mining laws of the United States, so far as the same apply to metalliferous minerals.

The President's power to make temporary withdrawals of lands from mineral entry was not destroyed by this Act. *U. S. v. Midwest Oil Co.*, 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673 (1915). The President is authorized to withdraw and reserve public lands for public uses free of the operation of the mining laws notwithstanding the provisions of 43 U.S.C. § 142, 40 Op.Att'y Gen. 71 (1941). Such withdrawals are made under the President's inherent power to withdraw public lands. See *P & G Mining Company*, 67 I.D. 217 (1960). This inherent authority extends to permit the President to withdraw lands from all forms of appropriation. *Noel Teuscher*, 62 I.D. 210 (1955).

The acquiescence or approval of Congress to the practice of withdrawing lands operates as an implied grant of the power to make such withdrawals. The Supreme Court explained the circumstances which justify the creation of this doctrine:

The Executive, as agent, was in charge of the public domain; by a multitude of orders extending over a long period of time and affecting vast bodies of land, in many States and Territories, he withdrew large areas in the public interest. These orders were known to Congress, as principal, and in not a single instance was the act of the agent disapproved. Its *acquiescence* all the more readily *operated as an implied grant of power* in view of the fact that its exercise was not only useful to the public but did not interfere with

any vested right of the citizen. *U. S. v. Midwest Oil Co.*, 236 U.S. at 475, 35 S.Ct. at 314. (Emphasis added.)

■ *U. S. v. Midwest Oil Co.* concerned a withdrawal made prior to the enactment of the Pickett Act whereby Congress expressly authorized the President to make temporary withdrawals of public lands. Even assuming that the Pickett Act did supersede the implied authority of the President to make withdrawals, Congress has, by its acquiescence, restored that power.

In 1941, Attorney ·General Robert H. Jackson issued an opinion holding that, notwithstanding the provision of the Pickett Act, the President had the "implied authority" to withdraw public lands through the acquiescence of Congress. He concluded that this implied authority permitted the President to withdraw public lands free of the operation of the mining laws. 40 Op. Att'y Gen. 73 (1941).

In 1957, in legislation limiting the Executive's authority to withdraw lands for military use, 143 U.S.C. §§ 155–158, Congress expressly acknowledged that its acquiescence had again given rise to a grant of implied authority. The legislative history for this act states:

> Congress—applying the Midwest Oil yardstick—has perhaps, since 1941 remained silent, and has therefore indulged in a practice—* * * equivalent to acquiescence and consent that the practice be continued until the power exercised is revoked.

> H.R. 5538 is specifically aimed at breaking that silence . . . with respect to the Federal property embraced by its terms, and for the reasons hereinafter set out, and to that extent signaling an end to the implied consent by direct congressional enactment limiting the power exercised. S.Rep. 857, 85th Cong., 2nd Sess. (1958), U.S.Code, Cong. & Admin.News 1958, p. 2238.

The Executive's implied authority over non-military withdrawals remained uncurtailed.

In 1968, the Secretary of the Interior presented a detailed statement supporting his oil shale program, including the withdrawal questioned here, to the Senate Committee on Interior and Insular Affairs. Congress was, therefore, aware of the proposed withdrawal and, by making no effort to prevent such action by the Secretary acquiesced in the Secretary's action.

Finally, in 1971 Congress directed the Secretary of the Interior to exercise the implied authority to withdraw lands from the operation of the mining laws. Section 17 of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1616(d)(2) directed the Secretary to withdraw 80 million acres from all forms of appropriation including location under the mining laws under the authority provided for in existing law. The only authority for withdrawal from mineral location was the implied Presidential authority which had been delegated to the Secretary of Interior pursuant to Executive Order No. 10355 of May 26, 1952.

■ It is obvious from the foregoing that Congress had knowledge of and acquiesced in repeated assertions of the implied authority under which the oil shale lands in question were withdrawn. The withdrawal, therefore, was valid and effective prior to the entry by P.G.E.

■ The plaintiffs further contend that the withdrawal was arbitrary and capricious because there was no basis for a finding that the lands are valuable for oil shale development. The Secretary of the Interior testified before the Senate Judiciary and Interior Committees that the withdrawal was necessary to prevent further clouding of title to oil shale lands. Protection of the potential for development after technology has progressed sufficiently to make extraction of oil from oil shale feasible is ample justification for the withdrawal.

■ It is well established that a mining claim located on land which is not open to appropriation confers no rights on the locator. *U. S. v. Consolidated Mines & Smelting Co.*, 455 F.2d 432 (9th Cir. 1971). The lands in question were properly withdrawn

from location under the mining laws at the time of P.G.E.'s entry. The plaintiffs, therefore, have acquired no rights under the mining laws to the lands in question.

Defendants' Motion for Judgment on the Pleadings will be granted and Plaintiffs' Motion for Summary Judgment will be denied. Judgment shall be entered accordingly.