WISENAK, INC., an Alaska
Corporation, Plaintiff,

v.

Cecil ANDRUS, Individually and as Secretary of the Interior of the United States of America, Defendant.

No. F76–38 Civil.

United States District Court,
D. Alaska.

June 7, 1979.

Alaska Legal Services Corporation, Michael J. Frank, Gregory M. O'Leary, Frederick Torrisi, Anchorage, Alaska, for plaintiff.

Alexander O. Bryner, U. S. Atty. for Alaska, Anchorage, Alaska, for defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on plaintiff's motion for partial summary judgment and on defendant's motion for summary judgment.

On December 18, 1971, Congress passed the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601–27 (1976), to provide a "fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims." 43 U.S.C. § 1601(a). As a part of the claims settlement 43 U.S.C. § 1613(h)(2) authorized the Secretary of Interior to

> withdraw and convey to a Native group that does not qualify as a Native village, if it incorporates under the laws of Alaska, title to the surface estate in not more than 23,040 acres surrounding the Native group's locality. The subsurface estate in such land shall be conveyed to the appropriate Regional Corporation.

"Native group" is defined in 43 U.S.C. § 1602(d) as "any tribe, band, clan, village, community, or village association of Natives in Alaska composed of less than twenty-five Natives, who comprise a majority of the residents of the locality."

On December 28, 1971, ten days after enactment of ANCSA, the Secretary of Interior through his Assistant Secretary issued Public Land Order (PLO) 5150 which withdrew and reserved various federal public lands, subject to valid existing rights, as a utility and transportation corridor for the Alaska oil pipeline. 36 Fed.Reg. 25410 (December 31, 1971). The land order was issued "by virtue of the authority vested in the President and pursuant to Executive Order 10355 of May 26, 1952 (17 F.R. 4831). . . . ." PLO 5150 established a corridor extending from the North Slope of Alaska (Prudhoe Bay) south to Valdez on Prince William Sound.

Regulations promulgated by the Secretary provide that "Native group selections shall not exceed the amount recommended by the regional corporation or 320 acres for each Native member of a group, or 7,680 acres for each Native group, whichever is less." 43 C.F.R. § 2653.6(b)(1) (1978). On December 17, 1973, the plaintiff Wisenak, Inc.,[1] filed a selection application for vari-

1. The shareholders of Wisenak, Inc. are from Wiseman, a small community 150 miles north of Fairbanks on the Middle Fork of the Koyu-kuk River at its junction with Wiseman Creek. At the time of the selections, Wisenak, Inc. was incorporated under the laws of the State of

ous lands totalling 7,680 acres. All of the lands selected had been withdrawn and reserved from the public domain by PLO 5150 for the Alaska pipeline utility and transportation corridor.

On May 9, 1974, the Alaska State Office of the Bureau of Land Management (BLM) rejected plaintiff's application on the ground that the lands selected by plaintiff were withdrawn under the public land laws and from selection by Native groups. The Alaska Native Claims Appeal Board (ANCAB) affirmed the decision of the BLM. Plaintiff in this lawsuit seeks to reverse the ANCAB decision.

### Selection Rights of a Native Group

■ A "Native group" is distinguished from a "Native village" by being composed of less than the twenty-five or more Alaskan Natives required for a "Native village." Compare 43 U.S.C. § 1602(c) with 43 U.S.C. § 1602(d). 43 U.S.C. § 1613(h) authorizes the Secretary to "withdraw and convey 2 million acres of unreserved and unappropriated public lands located outside the areas withdrawn by sections 1610 and 1615[2] of this title" and provides several ways in which the Secretary may dispose of the land withdrawn.[3] One of those ways is to convey to a Native group, if it incorporates under the laws of Alaska, the surface estate[4] of no more than 23,040 acres in the group's locality. 43 U.S.C. § 1613(h)(2). As stated previously the Secretary has promulgated regulations which give a Native group the right to select up to 7,680 acres of land. 43 C.F.R. § 2653.6(b) (1978). The court can only conclude from 43 U.S.C. § 1613(h) that the Native group's selection

rights are limited to the lands that the Secretary is authorized to withdraw and to convey, namely, unreserved and unappropriated lands.

### Withdrawal of Pipeline Corridor

Public Land Order 5150 withdrew a transportation and utility corridor "from all forms of appropriation under the public land laws except for location for metalliferous minerals under the mining laws" and

> from selection by any native group or village or regional corporation under the Alaska Native Claims Settlement Act of December 18, 1971, Public Law 92–203, and reserved as a utility and transportation corridor within the meaning of section 17(c) of said Alaska Native Claims Settlement Act in aid of programs for the U.S. Government and the State of Alaska.

The authority cited in the order for this withdrawal was the Pickett Act, the Act of June 25, 1910, 36 Stat. 847 (formerly 43 U.S.C. § 141)[5] and the implied authority of the President to withdraw public lands from entry or sale.[6] The Pickett Act stated:

> The President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry any of the public lands of the United States, including Alaska, and reserve the same for water-power sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an Act of Congress.

---

Alaska and at that time had 24 shareholders. Doyon, Ltd., the relevant regional corporation, filed its concurrence in Wisenak's selections the same day in accordance with 43 C.F.R. § 2653.2(b).

**2.** 43 U.S.C. § 1610 and § 1615 provide for a statutory withdrawal of lands around specified Native villages.

**3.** See 43 U.S.C. § 1613(h)(1), (2), (3), (4), (5), (6), (7) and (8).

**4.** The subsurface is conveyed to the appropriate Regional Corporation.

**5.** The Pickett Act was repealed by the Federal Land Policy and Management Act, Public Law 94–579, § 704(a), 90 Stat. 2792, effective October 21, 1976.

**6.** See United States v. Midwest Oil Co., 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673 (1915).

The Act authorized the President[7] to withdraw public lands from disposal temporarily for public purposes. *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 442–43 (9th Cir. 1971); *Mecham v. Udall,* 369 F.2d 1 (10th Cir. 1966). There is no dispute that the withdrawal order operated upon public lands.

In *Mecham v. Udall* a withdrawal that was in effect for 36 years was held to be temporary. The withdrawal in that case involved oil shale lands. The court stated:

> We cannot say that from the Government's viewpoint and considering its permanence compared to the life of man, and the significance of oil shale as a national resource, that this [withdrawal] has not been temporary. . . . The Pickett Act and the Executive Order both expressly provide for revocation of the withdrawal by either the President or by Congress. Thus appellants can seek a revocation by either if they feel the withdrawal has extended beyond what a temporary one should.

369 F.2d at 4. *See also United States v. Consolidated Mines & Smelting Co.,* 455 F.2d at 444–45.

■ That the withdrawal of the pipeline corridor was for a public purpose can hardly be doubted. *Cf. United States v. Alaska,* 423 F.2d 764 (9th Cir. 1970) (Establishment of Kenai National Moose Range was for a public purpose under Pickett Act). In the Alaska Native Claims Settlement Act the Congress recognized that the Secretary of Interior had the power to withdraw a pipeline corridor. 43 U.S.C. § 1616(c) states:

> In the event that the Secretary withdraws a utility and transportation corridor across public lands in Alaska *pursuant to his existing authority,* the State,

the Village Corporations and the Regional Corporations shall not be permitted to select lands from the area withdrawn.

(emphasis added)

In addition, the trans-Alaska Pipeline Authorization Act, which was passed after the withdrawal order, recognized that the "early development and delivery of oil and gas from Alaska's North Slope to domestic markets is in the national interest . . . ." 43 U.S.C. § 1651(a).

■ In addition to the Pickett Act, Public Land Order 5150 cited the implied authority of the Executive to withdraw lands from the public domain to protect the national interest. At the time[8] the order was issued the Executive clearly possessed such implied power. *United States v. Midwest Oil Co.,* 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673 (1915); *Mason v. United States,* 260 U.S. 545, 43 S.Ct. 200, 67 L.Ed. 396 (1923); *Grisar v. McDowell,* 6 Wall. 363, 73 U.S. 363, 18 L.Ed. 863 (1867); *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 442–43 (9th Cir. 1971); *Portland General Electric v. Kleppe,* 441 F.Supp. 859 (D.Wyo.1977); *Brennan v. Udall,* 251 F.Supp. 12 (D.Colo.1966.)

Despite the strong authority for the Executive power to withdraw public lands for important national purposes such as the pipeline corridor,[9] the plaintiff contends that the order does not apply to it. However, the order on its face applies to "Native groups." The plaintiff's argument is two-fold. First, plaintiff contends that it possesses valid existing rights which are not and cannot be disturbed by the order. Second, plaintiff contends that Native groups have rights to select land within the pipeline corridor that village and regional

---

**7.** While the Act grants power to the President, Executive Order No. 10355, May 26, 1952, delegates the President's authority to the Secretary of the Interior. *See also Wilbur v. United States,* 60 App.D.C. 11, 13–14, 46 F.2d 217, 219–220 (1930) *affirmed* 283 U.S. 415, 51 S.Ct. 502, 75 L.Ed. 1148 (1931).

**8.** Since the passage of Federal Land Policy and Management Act, P.L. 94–579, on October 21, 1976, the implied authority of the President

under *Midwest Oil* has been repealed. § 704(a), 90 Stat. 2792. Whether the President possesses inherent constitutional power to withdraw land was discussed in *Midwest Oil* but never decided.

**9.** To the extent that the plaintiff challenges the size of the corridor, the court finds the amount of land withdrawn well within the discretion of the Secretary of Interior.

corporations do not have by virtue of 43 U.S.C. § 1616(c).

■ There is no dispute that the plaintiff did not select the land until after PLO 5150 was issued. The plaintiff's rights in any particular parcel of land did not vest until it filed its land selections. This is much like the well-established principle in mining law that a claim located on land which is not open to appropriation confers no rights on the locator. *United States v. Consolidated Mines & Smelting,* 455 F.2d 432 (9th Cir. 1971); *Portland General Electric Co. v. Kleppe,* 441 F.Supp. 859, 862–63 (D.Wyo.1977). After the Secretary promulgated the regulations on Native group selections, the plaintiff had rights to make land selections, but had acquired no valid existing rights in the particular land eventually selected. The plaintiff attempts to establish valid existing rights by referring to prior use and occupancy by the Natives. Unlike other acts, such as the Alaska Native Allotment Act,[10] the selection rights under ANCSA have no direct relationship to land used or occupied by the Natives. On the contrary, the Act extinguished aboriginal claims[11] and in exchange gave the Natives selection rights which become vested in a particular parcel only when a valid selection is made. Valid selections were not made in this case because the land was already reserved.

■ The second argument made by the plaintiff in an attempt to circumvent the effect of PLO 5150 is based on 43 U.S.C. § 1616(c). This reference to the future use of the Secretary's withdrawal powers to create the pipeline corridor states that village or regional corporations would not be allowed to select land within such a corridor. The plaintiff contends that the failure to include Native groups in this prohibition

means they can select land within the corridor. The argument overlooks the difference between the selection rights of Native groups and village and regional corporations. Village and regional corporations could select some reserved lands, such as National Wildlife Refuges, while Native groups were limited to "unreserved and unappropriated" land. *Compare* 43 U.S.C. §§ 1610, 1611 *with* 43 U.S.C. § 1613(h). It was therefore necessary to specifically prohibit village and regional corporations from selecting land in the pipeline corridor. The failure to prohibit Native groups from doing what they had no right to do in the first place, cannot be construed to give Native groups special rights in the corridor.

*The Secretary's Discretion to Deny All Land to Plaintiff*

■ The Secretary contends that 43 U.S.C. § 1613(h) is a permissive statute that allows him the discretion to deny all land to a Native group. Whatever discretion the Secretary possessed prior to promulgating regulations which gave Native groups selection rights,[12] this court cannot agree that Wisenak's right to select land at this time is completely within the discretion of the Secretary. By establishing a system that allows Native groups to select land, the Secretary has exercised his discretion and cannot now continue to pick and choose among Native groups with complete freedom. The Native groups have now acquired some rights to select land that are enforceable in a court of law.

■ The Secretary in this litigation has also maintained that if the plaintiff is not allowed to select lands withdrawn under PLO 5150, it is not entitled to select any lands under the Alaska Native Claims Settlement Act.[13] The Department of Interior

---

10. 34 Stat. 197 (formerly 43 U.S.C. §§ 270–1 to 270–3, repealed by the Alaska Native Claims Settlement with a savings clause for applications pending. 85 Stat. 710.)

11. *See generally United States v. ARCO,* 435 F.Supp. 1009 (D.Alaska 1977).

12. 43 C.F.R. § 2653.6(b) (1976).

13. This position is illustrated by the defendant's answers to two interrogatories:

*Interrogatory No. 1:*

If Wisenak, Inc. is not permitted to select lands withdrawn vnder P.L.O. 5150 as amended, is it your position that other lands *not* described by 5150 are available for selection by, and patent to Wisenak, Inc.?

*Answer:*

has adopted regulations which create a situation where groups such as the plaintiff, that have insufficient land eligible for selection in the immediate vicinity of their homes, get no land. This means that the members of the plaintiff will have had their aboriginal rights extinguished but will get nothing in return. This result is created by the Department of Interior taking a narrow view [14] of what is included in a Native group's locality. This court has serious doubts whether this position is consistent with the purpose of ANCSA, which is to provide a "fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims." 43 U.S.C. § 1601(a). The court cannot at this time grant a motion for summary judgment which allows the Secretary to deny all land to the plaintiff.

■ The Department of Interior appears to be in the midst of a policy change which would allow the plaintiff to make other land selections. In a document [15] dated March 3, 1978, and signed by Assistant Secretary Guy Martin and Secretary Cecil Andrus, the Secretaries have recognized

that Native groups such as the plaintiff should be granted the right to select land within 50 miles of their situs.[16] Evidently the Department's regulations have not caught up with the decisions of the Secretary and Assistant Secretary. The Department should be given an opportunity to adopt regulations that are consistent with the policy decisions that have been made, before this court proceeds with this case.

This case will be remanded to the Department of Interior for the purpose of allowing the plaintiff to petition the Secretary to allow it to select other unreserved lands within the group's general locality. This remand will also allow the Department to review its regulations so that they can become consistent with the policy decisions made by the Secretary and the purposes of the Alaska Native Claims Settlement Act.

Accordingly IT IS ORDERED:

1. THAT plaintiff's motion for partial summary judgment is denied.

2. THAT defendant's motion for summary judgment is granted in part and denied in part.

---

No.
*Interrogatory No. 3:*
If your answer to interrogatory 1 is "no", is it your position that as a consequence of the effect of P.L.O. 5150, Wisenak, Inc. is not entitled to select any lands under the Alaska Native Claims Settlement Act of 1971 (43 U.S.C. § 1601 *et seq.*)?
*Answer:*
Yes.

14. This court and the Department of Interior are required to follow the general rule that statutes, such as ANCSA, passed for the benefit of Indians are to be liberally construed, doubtful expressions being resolved in favor of the Indians. *Alaska Pacific Fisheries v. United States,* 248 U.S. 78, 89, 39 S.Ct. 40, 63 L.Ed. 138 (1918); *Alaska Public Easement Defense Fund v. Andrus,* 435 F.Supp. 664, 671 (D.Alaska 1977); *People of South Naknek v. Bristol Bay Borough,* 466 F.Supp. 870, 873 (D.Alaska 1979).

15. The document is entitled "Alaska Native Claims Settlement Act Implementation and Policy Review."

16. The section on Native group selections states on page 20–D–1:
REVIEW OF SECTION 14(h) REGULATIONS—Native Groups and in lieu lands.
Issue:

Should the Department's position on eligibility of Native Groups and the availability of in lieu lands be re-evaluated?
Decision:
The position has been re-evaluated and the regulations should be modified to provide:
1. Land availability not be a requirement for eligibility.
2. An eligible Group's selection shall include otherwise available land that consists of the area occupied by the Group's situs and such adjacent and used public lands up to its entitlement.
3. Where the land in 2 above is insufficient, or unavailable (Federally owned non-Forest, non-Refuge, non-"BLM administered;" is State-owned/selected; or is privately owned) the Secretary, in his discretion, may withdraw up to two times the Group's remaining entitlement public land that (1) is otherwise available (Forest or Refuge lands, or lands solely withdrawn for the purpose of and subject to the classification requirements of section 17(d)(1); (2) to the extent possible, of a character similar to those on which the Group is located; (3) in the order of their proximity to the center of the Group's situs; and (4) within 50 miles of the Group's situs.
The Secretary shall give consideration to any lands nominated by the Group.

3. THAT this case is remanded to the Department of Interior for the purpose of considering a new application of the plaintiff and for further proceedings consistent with this opinion.

4. The Clerk may prepare a final judgment form whereby the cause is remanded to the Department of the Interior for further proceedings.